## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Mark B. Dargis, being duly sworn and appointed as a Special Agent of the Federal Bureau of Investigation, hereby make the following statement, based on information obtained by myself, other Special Agents of the Federal Bureau of Investigation, the U.S. Department of Health and Human Services Office of Inspector General, the U.S. Office of Personnel Management Office of Inspector General, and Detectives of the District of Columbia Metropolitan Police Department.

1. This Affidavit is made in support of a search warrant for the objects described as **three cellular telephones seized on July 13, 2006,** in the course of executing an authorized search warrant upon the residence of MELVIN GALE (hereinafter "GALE"), located at XX XXXXX Street Northeast, Washington, District of Columbia. The objects to be searched are further described in Attachment A of this Affidavit.

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since 2003, assigned to the Washington Field Office in the District of Columbia. In that time I have been assigned to a white collar crime unit, investigating health care fraud matters in the District of Columbia and surrounding areas, to include the diversion of prescription narcotic drugs and the commission of related drug crimes by those who illegally obtain and sell prescription narcotic drugs. Since 2003, I have received training and experience in the enforcement of the laws of the United States, interviewing and interrogation

techniques, arrest procedures, search warrant applications, search and seizure, white collar crimes, health care fraud, prescription drug diversion and associated fraud in the field of pain management, and various other crimes. In the overall course of my training and experience, I have become familiar with the methods and techniques associated with the diversion of prescription narcotic drugs, the distribution of illicit narcotics and other controlled substances, the laundering of drug sale proceeds, and the organization of criminal drug conspiracies. In the course of conducting my investigations of health care fraud, prescription drug diversion, and pain management fraud since 2003, I have either been involved in the use of, or coordinated the planning and execution of, the following investigative techniques: research of public records and databases, physical surveillance, electronic surveillance including consensual monitoring and recording of conversations, data analysis, the use of confidential informants and cooperative witnesses, undercover operations, and search warrant operations.

3.   The facts and information contained in this Affidavit are based upon my personal knowledge of this investigation, and also the information conveyed to me by other Special Agents of the FBI, the Department of Health and Human Services Office of Inspector General (HHS-OIG), the Office of Personnel Management Office of Inspector General (OPM-OIG), and Detectives of the District of Columbia Metropolitan Police Department (MPD) who are involved in this investigation. The information in this Affidavit does not include each and every fact known to the Government, rather it only includes the information necessary to prove that probable cause exists for a search warrant to be issued for the below identified and described objects, for evidence of violations of Title 21, United States Code, Section 841(a) (Distribution of a Controlled Substance).

**CONDUCT OF INVESTIGATION**

4.      On or about April 20, 2006, a Cooperative Witness (hereinafter CW #1), who has been prosecuted in another jurisdiction, voluntarily contacted the FBI and reported that an individual known to him/her as MELVIN GALE (hereinafter "GALE") is a significant trafficker of diverted prescription drugs in Washington, D.C. CW #1 was subsequently interviewed by Special Agents of the FBI regarding the information he/she claimed to possess, and the Agents in turn provided a summarized verbal report to your Affiant.

5.      On or about April 25, 2006, Special Agents of the FBI drove in a vehicle with CW #1 to an area of Washington, D.C., where CW #1 claimed to have knowledge of GALE's current residence. CW #1 subsequently identified the residence at XX XXXXX Street Northeast, Washington, D.C. as that of GALE.

6.      On April 26, 2006, a Special Agent of the FBI conducted research of publically available databases via computer and the Internet, using the identification details provided by CW #1, and confirmed that the residence located at XX XXXXX Street Northeast, Washington, D.C. is the most current residence of record for MELVIN GALE. This research also produced GALE'S date of birth and social security account number. The above described results were printed in hardcopy form and reviewed by your Affiant.

7.      On May 4, 2006, CW #1 was interviewed by your Affiant and related detailed information regarding GALE'S sources for obtaining the diverted prescription drugs and his methods for selling them.

8.      On or about May 6, 2006, your Affiant conferred with Special Agent Christopher Gleason of OPM-OIG, who reported that an individual named MELVIN GALE is currently a

registered beneficiary of the Federal Employee Health Benefit Plan (FEHBP), a health insurance program administered by the U.S. Government for federal employees, including those employees of the Government of the District of Columbia. Special Agent Gleason further reported that GALE'S wife, THERESA ALSTON GALE, is also a FEHBP beneficiary, registered as a dependent of GALE. Special Agent Gleason confirmed that the date of birth, social security account number, and home address for GALE in the FEHBP records system were identical to the information obtained previously by Special Agents of the FBI via Internet research.

9. FEHBP health insurance claim data shows that GALE regularly receives monthly prescription refills in his name for a variety of controlled substances. The most commonly received are: Oxycontin (Oxycodone) 40 milligrams, quantity 180 pills, Oxycontin (Oxycodone) 80 milligrams, quantity 30 pills, Percocet (Oxycodone with Acetaminophen) 7.5/325 milligrams, quantity 120 pills, and Methadone 10 milligrams, quantity 120 pills. GALE has been receiving prescription refills through the FEHBP every month since June, 2003.

10. FEHBP health insurance claim data shows that THERESA ALSTON GALE regularly receives monthly prescription refills in her name for a variety of controlled substances. The most commonly received are: Oxycontin (Oxycodone) 40 milligrams, quantity 180 pills, Percocet (Oxycodone with Acetaminophen) 7.5/325 milligrams, quantity 120 pills, and Methadone 10 milligrams, quantity 120 pills. THERESA ALSTON GALE has been receiving prescription refills through the FEHBP every month since April, 2003.

11. According to the Controlled Substances Act of 1970 (21 U.S.C. § 801 et seq.), further enhanced by the Schedules of Controlled Substances found at 21 C.F.R. § 1308 et seq., Oxycodone, Oxycodone with Acetaminophen, and Methadone are all Schedule II controlled

substances.

12.     On June 26, 2006, at the direction of the FBI, CW #1 contacted GALE telephonically and arranged to meet him on June 27, 2006 with the intention of purchasing diverted prescription drugs from GALE.  This call was monitored and recorded by Special Agents of the FBI.

13.     On June 27, 2006, CW #1 attended a pre-arranged meeting with GALE at GALE'S residence located at XX XXXXX Street Northeast, Washington, D.C.  During the course of the meeting, CW #1 exchanged $3000 in FBI-provided funds for 90 pills of Oxycontin 40 milligrams and 30 pills of generic Oxycodone 80 milligrams provided by GALE.  The entire meeting was recorded for both audio and video by Special Agents of the FBI using technical equipment worn by CW #1.  Additionally, physical surveillance of CW #1 was maintained by Special Agents of the FBI, HHS-OIG, and OPM-OIG, who monitored the meeting in real-time via a radio transmitter worn by CW #1.

14.     At the conclusion of the meeting with GALE on June 27, 2006, CW #1 met with Special Agents of the FBI, who seized the Oxycodone and Oxycontin pills, contained in two separate unlabeled plastic bottles, as evidence.  CW #1 was subsequently debriefed and reported that GALE instructed him/her to rip the pharmacy labels off of the bottles before leaving the residence.  CW #1 further reported that he/she observed the patient name MELVIN GALE on one label and THERESA ALSTON on the other label.

15.     On June 28, 2006, at the direction of the FBI, CW #1 contacted GALE telephonically and arranged to meet him on June 29, 2006 with the intention of again purchasing diverted prescription drugs from GALE.  This call was monitored and recorded by Special Agents of the FBI.

16.     On June 29, 2006, CW #1 attended a pre-arranged meeting with GALE at GALE'S residence located at XX XXXXX Street Northeast, Washington, D.C.  During the course of the meeting, CW #1 exchanged $4000 in FBI-provided funds for 200 pills of generic Oxycodone 40 milligrams provided by GALE.  Although CW #1 was wearing technical equipment provided by the FBI for the purpose of recording the meeting with GALE, it was discovered afterwards that the equipment malfunctioned and no recording was obtained.  However, physical surveillance of CW #1 was maintained by Special Agents of the FBI, HHS-OIG, and OPM-OIG, who monitored the meeting in real-time via a radio transmitter worn by CW #1.

17.     At the conclusion of the meeting with GALE on June 29, 2006, CW #1 met with Special Agents of the FBI, who seized the Oxycodone pills, which were contained in an unlabeled plastic bottle, as evidence.  CW #1 was subsequently debriefed and reported that GALE instructed him/her to rip the pharmacy label off of the bottle before leaving the residence.  CW #1 further reported that he/she observed the patient name MELVIN GALE on the label.

**EXECUTION OF AUTHORIZED SEARCH WARRANT
UPON THE RESIDENCE OF MELVIN GALE,
XX XXXXX STREET NORTHEAST, WASHINGTON, DISTRICT OF COLUMBIA**

18.     Based on the conduct of the investigation described above, and with the evidence gathered as a result, your Affiant sought and obtained an authorized search warrant on July 11, 2006, from the District Court for the United States District of Columbia for the residence of MELVIN GALE located at XX XXXXX Street NE, Washington, D.C.

19.     On July 13, 2006, Special Agents of the FBI executed the authorized search warrant upon GALE'S residence and seized evidence related to GALE'S criminal drug conspiracy.  Among the items seized were the following controlled substances:

  1. 1,135 tablets of Methadone 10 milligrams;

  2. 240 tablets of Oxycodone with Acetominophen 7.5/325 milligrams, and ;

  3. 155 tablets of Oxycodone 40 milligrams.

20. Additionally, during the course of executing the above described search warrant on July 13, 2006, Special Agents of the FBI seized three cellular telephones that were found in GALE'S residence. The cellular telephones were subsequently inventoried and entered into the evidence control system at the FBI Washington Field Office in Washington, D.C.

### PROBABLE CAUSE FOR SEARCH OF THREE CELLULAR TELEPHONES SEIZED FROM THE RESIDENCE OF MELVIN GALE ON JULY 13, 2006

21. A review of NCIC criminal history records for MELVIN GALE, FBI number XXXXXXX, revealed a prior criminal arrest of GALE in Washington, D.C. on January 1, 1995, for violation of the Controlled Substances Act, specifically possession of cocaine with intent to distribute, while armed. Additionally, the NCIC report shows GALE has an extensive past history of arrests and convictions for felonies such as extortion, robbery, assault with a deadly weapon, kidnaping, and attempted murder.

22. During the series of controlled drug purchases between CW #1 and GALE, from June 26, 2006, to June 29, 2006, CW #1 and GALE communicated exclusively via cellular telephone in order to make all necessary arrangements for their meetings and transactions.

23. During the execution of a search warrant upon GALE'S residence on July 13, 2006, Special Agents of the FBI discovered and seized a significant quantity of controlled narcotic substances, which is strongly indicative of a criminal conspiracy to engage in prescription drug diversion and drug distribution.

24.     Based on my experience in the investigation of prescription drug diversion and associated drug crimes, and based on information relayed to me by other law enforcement officers assigned to investigate prescription drug diversion and narcotics crimes, I know that persons involved in the diversion of prescription drugs, and the selling and distribution of other illegal drugs, often leave evidence of their criminal activity in commonly used consumer electronic devices, such as cellular telephones.  This evidence often includes the stored names and telephone numbers of co-conspirators, digital photographs of known and unknown co-conspirators, records of recently made cellular telephone calls with co-conspirators, and records of electronic text messages exchanged between persons engaged in the illegal distribution of drugs.

## CONCLUSION

23.     For the reasons stated herein, your Affiant has probable cause to believe that stored within the objects described as **three cellular telephones seized on July 13, 2006,** in the course of executing an authorized search warrant upon the residence of MELVIN GALE, located at XX XXXXX Street Northeast, Washington, District of Columbia, and further described in Attachment A, there are presently evidence of violations of Title 21, United States Code, Section 841(a) (Distribution of a Controlled Substance).  Your Affiant respectfully requests a United States District Court for the District of Columbia issue a search warrant for the cellular telephones, fully described in Attachment A, for the search and seizure of the following: 1) stored names and telephone numbers of co-conspirators, 2) digital photographs of known and unknown co-conspirators, 3) records of recently made cellular telephone calls with co-conspirators, and 4) records of electronic text messages exchanged between persons engaged in the illegal distribution of drugs.  .

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

> Mark Dargis, Special Agent
> Federal Bureau of Investigation

Sworn to and subscribed before me on this _____ day of September, 2006.

> United States Magistrate Judge
> District of Columbia

**ATTACHMENT A**

<u>Description of the cellular telephones seized in the course of an authorized
search warrant on July 13, 2006, at the residence of MELVIN GALE,
XX XXXXX Street Northeast, Washington, District of Columbia</u>

The cellular telephones are described as follows:

2.  A Motorola model V360 cellular telephone branded with the service provider name of "T-Mobile". The device itself is a clamshell-style handset with a blue and silver outer shell. The serial number of the device is E18GFWR506.

3.  A Motorola model V330 cellular telephone branded with the service provider name of "T-Mobile". The device itself is a clamshell-style handset with a blue and silver outer shell. The serial number of the device is D603FM5F62.

4.  A Motorola model V330 cellular telephone branded with the service provider name of "T-Mobile". The device itself is a clamshell-style handset with a blue and silver outer shell. The serial number of the device is D60PFJPB83.